IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| DANIEL THOMAS and <br> TAMI THOMAS, <br><br> Plaintiffs, <br> v. <br><br> HSBC BANK USA, N.A. and PHH <br> MORTGAGE CORPORATION <br><br> Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. G-14-076 |

## REPORT AND RECOMMENDATION

Before the Court, by referral from the Honorable George C. Hanks, United States District Judge, are the competing Motions for Summary Judgment filed by Defendants HSBC Bank USA, N.A., and PHH Mortgage Corporation and Plaintiffs Daniel Thomas and Tami Thomas. (Docket Entry ("Dkt.") Nos. 19, 29, 39). After carefully considering the Motions, the responses and replies, and the applicable law, the Court now submits it Report and Recommendation to the referring Judge.

## I. BACKGROUND

This action was brought by Plaintiffs Daniel Thomas and Tami Thomas (hereinafter, "Plaintiffs") against Defendants HSBC Bank USA, N.A. ("HSBC") and PHH Mortgage Corporation (PHH) after their home, located in Anahuac, Texas, was threatened with a foreclosure sale.

The relevant and undisputed facts in this case are not overly complicated. Plaintiffs built their home in 1994. (Dkt. No. 39, Ex. B-5). On August 27, 2007, they obtained a home equity

1

loan for which they executed a mortgage in the amount of $155,900, in favor of Beneficial Texas, Inc. (*Id.*, Ex. A-1). HSBC began servicing the loan at a later date. (*Id.*).

Sometime in 2010, Plaintiffs began experiencing financial difficulties. (Dkt. No. 40, Ex. A-3). In or around August 2010, HSBC sent Plaintiffs information on loan modification. (Dkt. No. 19, Ex. B-1). Plaintiffs' problems persisted and, at the close of 2010, they were unable to pay the taxes on the property. (Dkt. No. 40, Ex. A-3). The property taxes were later paid in 2011 by the mortgagee and an escrow account was established to recoup the funds expended and to ensure sufficient funds were set aside to cover future tax payments. (*Id.*, Ex. A-3). In early February 2012, Plaintiffs requested that HSBC evaluate their account in order to determine if either their monthly payments could be lowered or their interest rate reduced. (*Id.*). In July 2012, HSBC sent Plaintiffs a written notice of default and notice of acceleration of their loan. (Dkt. No 29, Ex. 2). Plaintiffs responded by retaining counsel in October 2012. (Dkt. No. 1 at ¶14).

On March 22, 2013, HSBC sent Plaintiffs a letter informing them that their mortgage was "seriously delinquent" and that it had been referred to foreclosure. (Dkt. No. 34, Ex. 5; Dkt. No. 39, Ex. B-2). The letter informed Plaintiffs that they had the opportunity to enter into a Trial Period Plan ("TPP") whereby they would make three scheduled payments,[1] which were lower than their monthly mortgage payments, and that upon completion of the three payments, Defendants would send them an official loan modification agreement to be executed by both parties. (*Id.*).

Plaintiffs made the first timely payment to HSBC on April 29, 2013. (Dkt. No. 29, Ex. 4). Shortly thereafter, HSBC notified Plaintiffs that PHH would be the new servicer of their loan,

---

[1] Under the TPP, payments in the amount of $1303.71 were scheduled to be paid on May 1, 2013, June 1, 2013 and July 1, 2013. (Dkt. No. 39, Ex. A-5).

2

effective May 1, 2013. (Dkt. No. 39, Ex. B-3). In a letter dated May 29, 2013, PHH notified Plaintiffs, through their attorneys, that their request for loan modification was denied. (Dkt. No. 29, Ex. 7; Dkt. No. 34, Ex. 10; Dkt. No. 39, Ex. B-7). On May 30, 2013, Plaintiffs made their second payment to HSBC. (Dkt. No. 29, Ex. 5). Despite receiving notice that their request for loan modification had been denied, Plaintiffs also made the third payment to HSBC on June 28, 2013. (Dkt. No. 29, Ex. 6; Dkt. No. 39, Ex. A at ¶¶ 12, 14).

Thereafter, in a letter dated November 14, 2013, Plaintiffs were notified that their mortgage was "past due for the March 01, 2012 payment" and, if they did not cure the default[2] within thirty days, the note would be accelerated and foreclosure proceedings would be initiated. (Dkt. No. 39, Ex. B-4). Plaintiffs did not cure the default. (*See* Dkt. No. 1).

In January 2014, Plaintiffs filed suit against Defendants in state court and alleged various violations of Article XVI, §50(a)(6) of the Texas Constitution and a claim for breach of contract. (Dkt. No. 1). After Defendants timely removed the action to federal court on March 11, 2014, Plaintiffs twice amended their complaint.[3] In their "live" pleading, Plaintiffs allege that Defendants breached the agreement, which was contained in the March 13, 2013 TPP letter, to permanently modify their loan after they made the three scheduled payments. (Dkt. No. 34). In addition to seeking damages for the alleged breach of contract, Plaintiffs seek a permanent injunction to preclude Defendants from taking any action against them with regard to the property – namely, (1) attempting to purchase, transfer, assign or collect on the mortgage; (2) attempting to enter and take possession of the property or otherwise interfere with their right to quiet

---

[2] According to the November letter, the total amount to bring the loan current was $36,648.86.

[3] The Court pauses to note that Plaintiffs, in amending their complaint, have dismissed the constitutional claims that they previously urged. (Dkt. No. 34).

3

enjoyment and use of the properly; (3) attempting to sell and/or foreclose on the property; and (4) attempting to charge their account for attorney's fees in connection with this action. (*Id.* at 4). Defendants moved for summary judgment as to all Plaintiffs' claims (Dkt. No. 19) and then amended their motion after Plaintiffs amended their complaint. (Dkt. No. 39). Plaintiffs have also moved for summary judgment. (Dkt. No. 29). Insofar as the parties have filed their respective responses and/or replies, the competing motions are now ripe for consideration.

## II. STANDARD OF REVIEW

The Court analyzes the competing Motions under the well-established summary judgment standard. Fed. R. Civ. P. 56(c); *see generally, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999); *United States v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992).

## III. DISCUSSION

### A. Breach of Contract Claim

In order to prevail on a breach of contract claim, the party claiming a breach occurred must prove the existence of a valid, enforceable contract. *Crenshaw v. Gen. Dynamics Corp.*, 940 F.2d 128, 128 (5th Cir. 1991); *see also, Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (setting forth elements to establish a breach of contact claim); *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 670 (Tex.App.-Ft. Worth, 2010, no pet.) (a valid contract in Texas requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) meeting of the minds; (4) each party's consent to the terms; (5) execution and delivery of the contract with the intent that it be mutual and binding; and (6) consideration).

4

In the present case, Plaintiffs contend that Defendants are in breach of a valid and enforceable agreement to modify their home loan. In particular, Plaintiffs contend that Defendants offered to modify their home loan in the March 22, 2013, TPP letter, that the offer to modify their loan was conditioned only upon Plaintiffs' completion of three (3) trial modification payments, and that, despite their performance, Defendants breached the agreement by refusing to modify their home loan. Defendants argue that Plaintiffs' breach of contract claim fails as a matter of law because no valid enforceable contract existed.

This Court, having carefully considered all the evidence in this case, concludes that the March 22, 2013, TPP letter did not, as a matter of law, create a valid, enforceable contract to permanently modify Plaintiffs' mortgage upon their payment of the three scheduled TPP payments. The Court reaches this conclusion for several reasons. First, contrary to Plaintiffs' arguments, the letter does not evidence an intent by the Defendants to be bound simply by Plaintiffs making the three timely payments. *See Pennington v. HSBC USA, N.A.*, 493 Fed.Appx. 549 (5th Cir. 2012), *cert. denied*, _U.S._, 133 S.Ct. 1272, 185 L.Ed.2d 185 (2013) (concluding that the trial period plan "did not form a contract because the bank never expressed an intent to be bound" which is evidenced from its lack of signature on the modification agreement); *see also, Berry v. Federal Nat'l Mortgage Ass'n,*, _Fed.Appx. _, 2015 WL 1746460, at *1 (5th Cir. April 17, 2015) (reiterating holding from *Pennington*, "that if a 'TPP expressly requires that before the contract is final, the lender must send a signed copy to the borrower,' a contract is not created when the borrower signs the TPP and begins to perform."). As was the case in *Pennington*, the TPP letter clearly evidences an intent by Defendants not to be bound until all the conditions of the TPP were met – in other words, until Plaintiffs submitted two signed copies of the their modification

5

agreement **and** Defendants returned a signed copy of the agreement. The fact that Defendants accepted the three trial payments from Plaintiffs does not alter this conclusion. *See Pennington*, 493 Fed.Appx. at 555 (holding that a lender did not indicate an intent to be bound by an unsigned permanent modification agreement after it had accepted lower mortgage payments under a trial modified plan); *Williams v. Bank of America, N.A.*, No. H-13-648, 2014 WL 3511025, at *11 (S.D.Tex. July 14, 2014) (bank's acceptance of payments that were less than the original amount for several months did not evidence an intent to be bound by the trial modification letter and its acceptance of the amounts paid could reasonably seen as acceptance of partial payments on their mortgage).

Second, the essential terms of the agreement (*i.e.*, to permanent modify the mortgage) are lacking. *See T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992) ("[i]n order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promissor undertook."). While Plaintiffs attempt to parse the issue by arguing that, once they accepted and made the three payments, the TPP letter bound Defendants to permanently modify their home loan and that the essential terms of the loan modification could later be reduced to writing (*see* Dkt. No. 26 at 1; Dkt. No. 41 at 1), their argument lacks merit because it completely ignores the simple fact that *every* essential term concerning the modification would have been left to future negotiation which does not produce a binding contract but, instead, represents an unenforceable agreement to agree. *Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 323 (5th Cir. 2006); *Ft. Worth Indep. School Dist. v. City of Ft. Worth*, 22 S.W.3d 831, 846 (Tex. 2000); *Cooper v. Wells Fargo Bank, N.A.*, No. 4:11-CV-440, 2014 WL 3671204, at *5 (E.D.Tex. July 22, 2014).

6

Third, the alleged agreement to modify the loan is not enforceable because it was not supported by new consideration. *See, Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 702 (Tex.Ct.App.2008) ("[w]hen a party agrees to do no more than that which he is already bound to do under an existing contract, the consideration is not sufficient to support a modification."); *see also, Pennington*, 493 Fed. Appx. at 554-55 (recognizing when the mortgagor owed payments in excess of the proposed amounts, the acceptance of the payments by the mortgagee can reasonably be seen only as acceptance of partial payments on their regular mortgage payments); *Singh v. JP Morgan Chase Bank, N .A.*, No. 4:11-CV-607,2012 WL 3904827, at *3-4 (E.D.Tex. July 31, 2012) (trial-period payment plan was not consideration); *Rackley v. JPMorgan Chase Bank, Nat. Ass'n.*, Civil Action No. SA-11-CV-387-XR, 2011 WL 2971357, at *3-4 (W.D.Tex. July 21, 2011) (finding no contract formed with trial plans because there was a lack of new consideration).

## B. Statute of Frauds

Defendants argue that the Statute of Frauds precludes the enforcement of any alleged agreement to permanently modify Plaintiffs' mortgage.[4] Plaintiffs, while offering no direct refute,

---

[4] The Statute of Frauds, which is strictly adhered to in Texas, provides that "[a] loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing <u>and</u> signed by the party to be bound or that party's authorized representative." [Emphasis added]. TEX. BUS. COM. CODE § 26.02(b); *see also, Williams v. Wells Fargo Bank, N.A.*, _ Fed.Appx._ 2014 WL 1044304, at *4 (5th Cir. March 19, 2014). The law also requires that when a modification relates to a matter that must be in writing, the modification must also be in writing. *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256-57 (5th Cir. 2013); *see also, Williams*, 2014 WL 104434, at *4 (recognizing "[t]he statute of frauds also applies to preclude enforcement of oral modifications to loan agreements"); *Bank of Texas N.A. v. Gaubert*, 286 S.W.3d 546, 555 (Tex. App.-Dallas, 2009, review dism'd w.o.j.) (any verbal representation, which purports to alter the terms of a written loan agreement that exceeds $50,000 in value, is unenforceable under the Texas Statute of Frauds ); *Deuley v. Chase Home Finance, LCC*, No. 4:05-CV-04253, 2006 WL 1155230, at *2 (S.D. Tex. April 26, 2006) (explaining that under Texas law when an agreement purports to modify an agreement that must be in writing, the modification must also be in writing or it is unenforceable).

7

attempt to side-step the Statute of Frauds by claiming that they have satisfied the partial performance exception. (Dkt. No. 41 at 7; Dkt. No. 26 at 4).

Courts have recognized partial performance as an exception to the Statute of Frauds. "Under the partial performance equitable exception, an oral agreement that does not satisfy the traditional statute of frauds but that has been partially performed may be enforced if denying enforcement would itself amount to a fraud." *Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 554 (Tex.App.–Dallas 2009, pet. dism'd w.o.j.). "The fraud arises when there is strong evidence establishing the existence of an agreement and its terms, the party acting in reliance on the contract has suffered a substantial detriment for which he has no adequate remedy, and the other party, if permitted to plead the statute, would reap an unearned benefit." *Exxon Corp. v. Brreezevale Ltd.*, 82 S.W.3d 429, 439 (Tex.App.–Dallas 2002, pet. denied). Significantly, "[t]he actions asserted to constitute partial performance must be 'unequivocally referable' to the alleged oral agreement and corroborate the existence of that agreement; they 'must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced; otherwise, they do not tend to prove the existence of the parol agreement relied upon by the plaintiff.'" *Id.* at 439-40; *see e.g.*, *Rodriguez v. Klein*, 960 S.W.2d 179, 186 (Tex.App.–Corpus Christi 1997, no pet.) (finding no partial performance because plaintiff's action – the surrender of his business – was required under either the bill of sale, or the alleged oral contract, or the original agreement between the parties).

Despite Plaintiffs' urging in the present case, there is simply no evidence of an enforceable agreement between the parties sufficient for the partial performance exception to apply. *Horne v. Bank of America, N.A.*, No. 4:12-CV-622-A, 2013 WL 765312, at *4 (N.D.Tex. Feb. 28,

8

2013); *see also, Singh*, 2012 WL 3904827, at *4 (plaintiff's allegation of partial performance cannot corroborate the terms of an unspecified oral agreement). Accordingly, the Court concludes that partial performance is not applicable in this context. *Gaubert*, 286 S.W.3d at 555; *Singh*, 2012 WL 3904827, at *4.

### C. Proper Application of Payments

Plaintiffs make a generalized allegation that a prior payment totaling $10,000 was not applied to their account. (Dkt. No. 34 at ¶10). Although it is not clear if Plaintiffs are presenting this claim as a breach of contract claim or a claim for an accounting, in either event, their claim has no merit. Plaintiffs' undisputed Loan History reflects that all payments were properly applied. (Dkt. No. 39, Exs. C & C-1).

### D. Permanent Injunction

As a final matter, because Plaintiffs' breach of contract claim fails, their request for preliminary injunction likewise fails as a matter of law and, thus, should be denied. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (explaining that injunctive relief depends on a viable underlying cause of action); *Avila v. Compass Bank*, 2014 WL 4999440, at *3 (W.D.Tex. Oct. 7, 2014) (under Texas law, request for accounting, declaratory relief and injunctive relief are equitable remedies, not independent causes of action and, where no underlying cause of action from the complaint survives, these claims cannot stand on their own and must be dismissed).

## CONCLUSION

For all the foregoing reasons, this Court **RECOMMENDS** that Plaintiffs' Motion for Summary Judgment (Dkt. No. 29) be **DENIED**, that Defendants' Motions for Summary Judgment

(Dkt. No. 19, 39) be **GRANTED**, and that Plaintiffs' Second Amended Complaint be **DISMISSED** with prejudice.

The Clerk **SHALL** send a copy of this Report and Recommendation to the Parties who **SHALL** have until **May 28, 2015,** to have written objections, filed pursuant to 28 U.S.C. §636(b)(1)(C). Failure to file written objections within the prescribed time **SHALL** bar the Parties from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this _12th_ day of May, 2015.

_____
JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE